

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed March 24, 2011**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | | |
|---|---|---|---|
| IN RE: | § | | |
| | § | | |
| WHEELER HOSPITALITY, INC. | § | CASE NO. | 10-20166-rlj-11 |
| PERRYTON HOSPITALITY, INC. | § | | 10-20167-rlj-11 |
| BORGER PROPERTIES, INC. | § | | 10-20168-rlj-11 |
| CHILDRESS HOSPITALITY, L.P. | § | | 10-20169-rlj-11 |
| BORGER HOSPITALITY, INC. | § | | 10-20170-rlj-11 |
| DECATUR HOSPITALITY, INC. | § | | 10-20171-rlj-11 |
| | § | | |
| | § | JOINTLY ADMINISTERED UNDER | |
| DEBTORS | § | CASE NO. 10-20166-rlj-11 | |

_____

| | | | |
|---|---|---|---|
| | § | | |
| TOLI, INC. | § | CASE NO. | 10-20274-RLJ-7 |
| | § | | |
| DEBTOR | § | | |

_____

| | | |
|---|---|---|
| BORGER PROPERTIES, INC., et al. | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-02022 |
| | § | |
| AUER CORPORATION, et al. | § | |
| | § | |
| DEFENDANTS. | § | |

**MEMORANDUM OPINION**

This is a removed action in which the Court is asked to (1) set aside a prior state court judgment and dismissal order, both entered by default, and (2) order a new trial and related scheduling order. For the reasons stated, the Court grants the relief requested.

**Background**[1]

A complicated factual and procedural history gives rise to the issues at hand. After a hearing on the instant motion and a careful review of the record, the Court finds the following basic facts. In 2007 and 2008, six related real estate companies involved in the development and construction of hotels (collectively referred to as the "Hotel Entities"), all of which are now debtors before this Court,[2] entered into several contracts with a general contractor, Auer Corporation, for the construction of seven hotels. The hotel construction did not go smoothly, and significant litigation arose between the parties and with several subcontractors. Relevant to this case are eight lawsuits between the various Hotel Entities and Auer, all of which were filed in state court.[3] In some of these eight suits, Auer is the named plaintiff; in others, it is the

---

[1] Facts will be discussed within the Background portion and also where otherwise relevant.

[2] The Hotel Entities and related bankruptcy case numbers are: (1) Wheeler Hospitality, Inc. (case no. 10-20166), (2) Perryton Hospitality, Inc. (case no. 10-20167), (3) Borger Properties, Inc. (case no. 10-20168), (4) Childress Hospitality, L.P. (case no. 10-20169), (5) Borger Hospitality, Inc. (case no. 10-20170), and (6) Decatur Hospitality, Inc. (case no. 10-20171). These bankruptcy cases are jointly administered under the Wheeler Hospitality case number. With the exception of Borger Hospitality, which owns two hotels, each entity owns one of the seven hotels. Additionally, although the extent of its involvement with the building contracts and subsequent litigation is unclear, a Chapter 7 debtor, Toli, Inc. (case no. 10-20274), is also seeking relief.

[3] These suits were: (1) Auer Corporation v. Decatur Hospitality, Inc., No. 09-01-00563 (9th Dist. Ct., Montgomery County, Tex.); (2) Auer Corporation v. Borger Properties, Inc., No. 09-01-00565 (9th Dist. Ct., Montgomery County, Tex.); (3) Borger Properties, Inc. v. Auer Corporation, No. 38,541 (84th Dist. Ct., Hutchinson County, Tex.); (4) Borger Hospitality, Inc. v. Auer Corporation, No. 23,283 (132nd Dist. Ct., Scurry County, Tex.); (5) Borger Hospitality, Inc. v. Auer Corporation, No. 6,192 (118th Dist. Ct., Martin County, Tex.); (6) Childress Hospitality, Inc. v. Auer Corporation, No. 9,738 (100th Dist. Ct., Childress County, Tex.); (7) Auer Corporation v. Wheeler Hospitality, Inc., No. 09-01-00564 (410th Dist. Ct., Montgomery County, Tex.); and (8) Perryton Hospitality, Inc. v. Auer Corporation, No. 11,945 (84th Dist. Ct., Ochiltree County, Tex.).

defendant. Four of the eight lawsuits were consolidated for trial in Montgomery County state court ("Montgomery Litigation").[4]

The Montgomery Litigation was called for trial in February 2010, but the Hotel Entities that were parties there did not appear. On February 12, 2010, the Montgomery County court entered a default judgment for over $28 million in favor of Auer and its president, Raymond Teague, (collectively "Auer") and against certain of the Hotel Entities.[5] The court also dismissed claims of the Hotel Entities against Auer.[6]

The Hotel Entities filed a "Motion to Set Post-Answer Default Judgment and 'Order Granting Motion to Dismiss' Aside and for New Trial" ("Motion for New Trial") in the Montgomery County state court on March 11, 2010; on March 12, 2010, they each filed Chapter 11 bankruptcy with this Court. The Montgomery Litigation proceedings were stayed by the bankruptcy filings. *See* 11 U.S.C. § 362.

About a month later, the four non-consolidated suits were each individually removed to this Court and the consolidated Montgomery Litigation suits were removed to the bankruptcy court in the Southern District of Texas before the Honorable Marvin P. Isgur.[7] Judge Isgur

---

[4] These four cases were: (1) Auer Corporation v. Decatur Hospitality, Inc., No. 09-01-00563 (9th Dist. Ct., Montgomery County, Tex.); (2) Auer Corporation v. Borger Properties, Inc., No. 09-01-00565 (9th Dist. Ct., Montgomery County, Tex.); (3) Borger Hospitality, Inc. v. Auer Corporation, No. 6,192 (118th Dist. Ct., Martin County, Tex.); and (4) Auer Corporation v. Wheeler Hospitality, Inc., No. 09-01-00564 (410th Dist. Ct., Montgomery County, Tex.). An issue remains as to whether more cases were in fact consolidated in Montgomery County by virtue of oral transfer orders issued by the state court judges presiding in the cases filed in Hutchinson, Scurry, Childress, and Ochiltree counties.

[5] The court found Toli, Inc. and the Hotel Entities (except Perryton Hospitality, Inc.) jointly and severally liable to Auer for $11,359,166.09 and to Teague for $1,315,000.00, plus prejudgment interest on the awards of $567,958.30 and $65,750.00, respectively. The court also awarded post-judgment interest at 5% per annum and total court costs of $2,000. Additionally, Toli and the Hotel Entities (except Perryton) were ordered to pay $350,000 in attorney's fees and $14.5 million in exemplary damages.

[6] The Court notes this dismissal order states that Toli, Inc. and the Hotel Entities (excluding Perryton) failed to appear for their pre-trial hearing on February 5 and for trial on February 8, 2010, whereas the default judgment states the failure to appear for trial occurred on February 12.

[7] The Montgomery Litigation cases were initially removed to the Southern District because they were pending in a state court that sits within the Southern District.

granted the Hotel Entities' motion to transfer venue to the Northern District and hence to this Court.

Having collected all entities and actions before this Court, the Hotel Entities request that the merits of their Motion for New Trial be considered. The Court conducted a hearing on the Motion for New Trial on January 18, 2011.

## Discussion

1. *Jurisdiction*

The parties have not challenged the Court's jurisdiction and, indeed, there is no question whether the removed actions are related to cases under title 11. *See* 28 U.S.C. § 1334. Given the unusual posture of the cases, however—removed during the pendency of the state court's consideration of the Motion for New Trial—the Court will address the jurisdictional question potentially raised by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases that examined the contour of federal court jurisdiction when a federal court—that is not the Supreme Court—arguably sits in review of a state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In essence, district courts lack authority to "reverse or modify" a state court judgment because their congressional grant of federal jurisdiction is "strictly original." *See* 28 U.S.C. § 1257 (the jurisdictional statute); *In re Knezek*, 370 F. App'x 449, 452 (5th Cir. 2010). The Supreme Court recently discussed the circumstances under which the *Rooker-Feldman* doctrine operates to bar review of a matter. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). There, Justice Ginsberg clarified what had become a hazy area of law by explaining that the *Rooker-Feldman* doctrine is confined to "cases brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

At first glance, the issues here appear to fall within the doctrine. The Hotel Entities lost big in state court, albeit by default, and seek to have their injuries (resulting from the earlier-rendered state court judgment and dismissal order) redressed here. Despite this congruence, the *Rooker-Feldman* doctrine does not apply in this case for a simple reason: timing. The *Rooker-Feldman* doctrine applies where the losing party files suit in federal court *after* the state proceedings have ended. *E.g., Marketing on Hold, Inc. v. Jefferson*, No. A-10-CA-104-SS, 2010 WL 2900492, at *4 (W.D. Tex. July 19, 2010). When a case is removed prior to the conclusion of state court proceedings, a federal court is safely within its jurisdictional power to consider the matter—even when there is complete identity of parties and issues with a parallel state court case. *See Deutsche Bank Nat'l Trust Co. v. Sawyer*, No. 3:10-CV-1562-O, 2010 WL 4511021, at * 2 (N.D. Tex. Oct. 12, 2010) (holding the doctrine inapplicable where a case was removed pending a county court appeal); *see also Oviedo v. Hallbauer*, No. H-10-CV-330, 2010 WL 3909722, at *5 (N.D. Tex. Sept. 29, 2010) (holding that in a removed action, the issues before the court are "part-and-parcel" of the state court proceeding, and thus, the state court proceeding is not a *prior* action).

The state court proceedings were ongoing at the time this case was removed. In fact, the Motion for New Trial was pending. The Court is satisfied the matters at hand are not barred from its consideration by the *Rooker-Feldman* doctrine.

2. *Motion to set aside and for new trial*

The Hotel Entities argue the default judgment and dismissal order should be set aside and a new trial ordered because the judgments violated their constitutional right to due process, namely, the procedural right to notice and a hearing. The Hotel Entities also contend the Court should vacate the state court rulings under either Federal Rule of Civil Procedure 60(b) or Texas state law. *See* Fed. R. Civ. P. 60(b); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939) (promulgating the state law standard for setting aside a default judgment). Under any standard, the heart of the Hotel Entities' claim for relief is their assertion that they had no notice of the trial.

The evidence reveals the state court signed *two* scheduling orders within a three-day period that, at best, caused confusion concerning the actual trial date. One order, signed by the Montgomery County judge on September 14, 2009, states as follows: "Trial set 2/8/10 & PT 2/5/10." A separate order, signed on September 17, 2009, states as follows: "Trial R/S to 1/11/10; PT 1/8/10." The parties agree that "PT" means "pre-trial," and "R/S" is short form for "re-set." The parties do not agree regarding the effect of these orders.

The Hotel Entities contend the September 17 order, because it was the later-signed order, supersedes the September 14 order. Accordingly, they submit that they understood the trial date had been *moved up* to January 11, 2010, from the February 8, 2010 setting. This conclusion is supported by the fact that, on its face, the subsequently signed order "re-sets" the trial date. The Hotel Entities offered testimony that their state court attorney called the court shortly before the January trial setting and was informed by a court employee that there was no January 11 trial setting. They therefore did not appear for the January trial setting and simply awaited the

issuance of a new trial setting by the court. Under this analysis, the Hotel Entities contend the February default judgment and dismissal order were entered without their knowledge and, thus, through no fault of their own, they were denied their right to defend the suit.

Auer offers an alternative theory of the effect of the two orders. Auer argues that although the orders were *signed* on the 14th and on the 17th, respectively, they were actually *issued* in reverse order. As a result, the earlier signed order actually takes precedence over the subsequently signed order because it is the order of *issuance* that controls. This is consistent with the chronology of the trial dates. The subsequently signed order reduced the amount of trial preparation time by roughly a month. Auer submits that it makes practical sense for the controlling order to be the one that reset the trial to a later date, not the one that reset it to an earlier date. To establish the order of issuance, Auer points to a date stamp located in the upper right-hand corner of each order. The Montgomery County court uses an electronic filing system that marks documents with a time stamp correlating to the time it is transmitted to the parties. The time stamps on the orders reflect that the order dated September 14 was in fact transmitted to the parties after the September 17 order was transmitted.[8]

Auer offered some testimony to rebut the assertion that the term "R/S" meant the September 17 order was re-setting the hearing set by the September 14 order. Auer's attorney on the Montgomery Litigation testified that there had been an even earlier trial setting, a setting in

---

[8]This table summarizes the scheduling order evidence:

| Date order was signed | Language on order | Date transmitted per time stamp |
|---|---|---|
| September 14 | "Trial set 2/8/10 & PT 2/5/10" | October 7, 2009 |
| September 17 | "Trial R/S to 1/11/10; PT 1/8/10" | September (illegible), 2009. |

early Fall of 2009. Thus, the phrase "re-set" referred to a re-setting from this earlier trial date and not the February trial date reflected on the September 14 order. Under Auer's theory, both parties were obligated to appear for the February trial date.

Auer points out that even if the two scheduling orders created some misunderstanding about the trial date, the Hotel Entities actually had notice. At a minimum, counsel for the Hotel Entities should have contacted the court to straighten-out any confusion over the trial date, Auer submits.[9] The Hotel Entities respond that there was no confusion. They simply received an order changing a trial setting from one day in February to another in January. Thus their only obligation was to show-up on the scheduled date in January. When that date was cancelled, it awaited a new scheduling order from the court.

The Court agrees that two orders purportedly signed within three days of one another and setting the same matter for trial on different days might rightly spark sufficient curiosity to cause a party to make an inquiry with the court. Nevertheless, based on the evidence presented, the Court can only conclude that the two orders created confusion.

Federal Rule of Civil Procedure 60(b) provides that, upon motion, a court may relieve a party of a final judgment, order, or proceeding for any of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;

---

[9] Although Auer was obviously in attendance in February, its evidence as to why and how it determined February was the correct date as opposed to January is not helpful. Auer offered no evidence that it contacted the court in light of the confusion. Instead, Auer's attorney at the time testified that she did not go to court in January because that date "wasn't on her calendar." Additionally, she said she knew February re-set the January trial date because the court included a note to that effect with its transmission of the September 14 order. However, no such note was produced for the Court's benefit.

>   (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>   (6)   any other reason that justifies relief.

*See* Fed. R. Civ. P. 60(b). The rule is designed to achieve "a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). To this end, the rule should be construed liberally. *See id.* This is not to suggest that final judgments should be lightly reopened, but that Rule 60(b) grants the court the power to do so when necessary to accomplish justice. *See Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968). Additionally, factors informing the Rule 60(b) analysis were articulated by the Fifth Circuit in *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962), as follows:

> (1) final judgments should not be lightly disturbed; (2) a Rule 60(b) motion is not to be used as a substitute for appeal; (3) the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was filed within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984) (citing *Gould*, 301 F.2d at 355-56).

The Court will address the applicable factors. It first acknowledges, as stated above, that final judgments should not be lightly disturbed. Further, while the Hotel Entities might achieve through the state appellate process the result they now seek with this Court, they certainly cannot

be criticized for seeking allowed post-judgment, pre-appeal relief before this Court.

Justice requires consideration of the case's merits. When in a particular case a judgment is entered or a dismissal ordered without litigating the claims or defenses of a party, the court should ensure the basic fairness of the proceeding. *See Gould*, 301 F.2d at 355-56.  As the Hotel Entities were not present at trial, the merits of their claims and defenses were obviously not considered. The confusion caused by the two orders provides an explanation for their failure to appear. This alone arguably warrants vacation of the judgment and dismissal order. In addition, at the hearing on the Motion for New Trial, the Hotel Entities presented testimony demonstrating the existence of potential claims against and defenses to Auer. Mr. Patel, principal of the Hotel Entities, testified that the Hotel Entities overpaid Auer, that Auer failed to pay subcontractors (though Auer had been paid by the applicable Hotel Entity), that there were structural defects from Auer's work, and that Auer may have converted product (granite) belonging to the Hotel Entities. While such evidence is conclusory, such claims and defenses, if proven true, may mitigate or otherwise alter the judgment.

The balance of factors weigh decidedly in favor of vacating the state court's orders. The Hotel Entities filed the Motion for New Trial within a reasonable time; it was filed in state court on March 11, 2010, one month after the February 12, 2010 default judgment was entered.  The Motion for New Trial was broached here on November 15, 2010, shortly after all of the parties and actions involved in the dispute were brought before the Court. Auer has not been prejudiced by any undue delay.

Other equities favor relief. No third party's rights will be affected by the litigation of these matters; the case can move to trial on a timely basis; the amount of the judgment is large

and thus so are the consequences. *See Seven Elves, Inc.*, 635 F.2d at 403 (stating "the amount of money involved is very great, itself militating in favor of a full trial on the merits"). Finally, and significantly, Auer is not prejudiced by litigating its claim.

Auer advances one final argument in opposition to a new trial. It contends that the Hotel Entities are in no position to ask for a new trial now given their actions (or lack thereof) during the pendency of the state proceedings. To support this, Auer points to the fact that the two attorneys of record for the Hotel Entities during the state court proceeding withdrew on or very near the scheduled trial dates—one in January, the other in February. Auer also submits that its discovery requests to the Hotel Entities were basically ignored. The evidence, in part, supports these charges. The Hotel Entities offered little in the way of an explanation for the withdrawal of its attorneys at or near the eve of trial. The Court acknowledges the possibility that the impending trial may have precipitated the attorneys' withdrawals. Auer contends these facts, when taken together, prove the Hotel Entities manifested no sincere attempt to prosecute these matters and thus should preclude a "do over" in this Court. Auer also contends that, as a practical matter, a new trial is pointless because the Hotel Entities are unable to prosecute their claims and defenses. Had a new trial been granted in state court, the Hotel Entities were not prepared for trial. They had no lawyer, and evidence of any claims or defenses would have been blocked given their failures to honor discovery requests. Auer submits the same result must occur in the removed action here.

The Court rejects Auer's arguments for two reasons. First, the implication of counsel withdrawing at a critical juncture and of discovery failures (or even abuses) are collateral to the issue before the Court. Vigor of prosecution or defense is simply not a factor to be considered in

a Rule 60(b) motion. *See Gould*, 301 F.2d at 355-56; *see also Seven Elves, Inc.*, 635 F.2d at 403 (holding that "any possible malpractice remedy against their attorney would be inadequate to restore the [moving party] to their prejudgment position"). Second, their argument ignores the fundamental fairness issue raised by the possibility that the Hotel Entities did not in fact have notice of the February trial setting. Assuming an immediate new trial under such circumstance is unrealistic. From the facts here, the Court cannot conclude that the Hotel Entities had effective notice of the February trial setting. An immediate new trial does not provide an adequate remedy.

## Conclusion

Having construed the rule in conjunction with the relevant factors and their application to the particular circumstances here—the problematic trial notice, the timely request for relief, the size of the judgment at issue, the absence of prejudice, and the Court's preference to reach the merits—the Court is satisfied that the Rule 60(b) standard has been met. As such, the Court need not address the Hotel Entities' due process argument or their claim for relief under Texas law.[10] The Court will set aside the default judgment and the dismissal order, and a trial date will be set by the Court.

---

[10] At the hearing, the parties spent much time addressing the standard under Texas law for setting aside a default judgment known as the "*Craddock* factors," which consider whether (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *See Craddock v. Sunshine Bus. Lines, Inc.*, 133 S.W.2d at 126. The Court believes the federal standard is the proper standard in this case, but to the extent the *Craddock* test is applicable, the Court finds it is satisfied as well. There is a significant overlap among the *Craddock,* Rule 60(b), and Fifth Circuit factors.

### End of Memorandum Opinion ###