U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**



**United States Bankruptcy Judge**

**Signed March 29, 2013**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | | |
|---|---|---|---|
| IN RE: | § | | |
| | § | | |
| WHEELER HOSPITALITY, INC. | § | CASE NO. | 10-20166-rlj-11 |
| PERRYTON HOSPITALITY, INC. | § | | 10-20167-rlj-11 |
| BORGER PROPERTIES, INC. | § | | 10-20168-rlj-11 |
| CHILDRESS HOSPITALITY, L.P. | § | | 10-20169-rlj-11 |
| BORGER HOSPITALITY, INC. | § | | 10-20170-rlj-11 |
| DECATUR HOSPITALITY, INC. | § | | 10-20171-rlj-11 |
| | § | | |
| DEBTORS. | § | | |

| | | |
|---|---|---|
| BORGER PROPERTIES, INC., et al., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-02022 |
| | § | |
| AUER CORPORATION, et al., | § | |
| | § | |
| DEFENDANTS. | § | |

## <u>MEMORANDUM OPINION</u>

The Court hereby issues its findings of fact and conclusions of law in this adversary

proceeding.  Trial was held July 19 and 20, 2012; September 13 and 14, 2012; October 12, 2012;

and November 9, 2012.

The Court refers to the parties as follows: plaintiffs Borger Properties, Inc., Wheeler Hospitality, Inc., Decatur Hospitality, Inc., Borger Hospitality, Inc., and Perryton Hospitality, Inc. will collectively be referred to as the "Hotel Entities"; defendant Auer Corporation will sometimes be referred to as "Auer," and defendant Raymond Teague will be referred to as "Teague."  Harish Patel, the principal of each of the Hotel Entities, will be referred to as "Patel."  Though Childress Hospitality, L.P. is a named plaintiff, the parties' *Proposed Joint Pre-Trial Order* [Docket No. 118] makes no mention of claims of Childress Hospitality, L.P.  The *Childress Hospitality, L.P.* bankruptcy case [Case No. 10-20169] was dismissed on October 15, 2012.

## I. FINDINGS OF FACT

### A.    Background Facts

*Bankruptcy Filing*

1.      On March 12, 2010, Wheeler Hospitality, Inc. [Case No. 10-20166], Perryton Hospitality, Inc. [Case No. 10-20167], and Decatur Hospitality, Inc. [Case No. 10-20171] filed voluntary petitions for bankruptcy pursuant to chapter 11 of the Bankruptcy Code, initiating separate chapter 11 bankruptcy cases.

2.      On March 12, 2010, Borger Properties, Inc. [Case No. 10-20168], Borger Hospitality, Inc. [Case No. 10-20170], and Childress Hospitality, L.P. [Case No. 10-20169] filed voluntary petitions for bankruptcy pursuant to chapter 11 of the Bankruptcy Code, initiating separate chapter 11 bankruptcy cases.

3.      On April 22, 2010, the Court entered an *Order Regarding Filing of Pleadings and Directing Joint Administration of Cases* [Docket No. 46, Case No. 10-20166], providing for joint

administration of the above bankruptcy cases, under lead Case No. 10-20166.

4.       On May 21, 2012, the Court entered an order deconsolidating the jointly

administered chapter 11 bankruptcy proceedings [Docket No. 590, Case No. 11-20166].

5.       On April 21, 2010, Toli, Inc. [Case No. 10-20274] filed a voluntary petition for

bankruptcy pursuant to chapter 7 of the Bankruptcy Code.

*Background on Adversary Proceeding*

6.       On April 9, 2010, Perryton Hospitality, Inc. removed a state court lawsuit pending

against Auer in Ochiltree County, Texas, into this Court in Adversary Proceeding No. 10-02005.

7.       On April 9, 2010, Borger Properties, Inc. removed a state court lawsuit pending

against Auer and Teague, individually, in Hutchinson County, Texas, into this Court in Adversary

Proceeding No. 10-02004.

8.       On April 9, 2010, Borger Hospitality, Inc. removed a state court lawsuit pending

against Auer in Scurry County, Texas, into this Court in Adversary Proceeding No. 10-02006.

9.       On April 9, 2010, Childress Hospitality, L.P. removed a state court lawsuit

pending against Auer in Childress County, Texas, into this Court in Adversary Proceeding No.

10-02003.

10.      On October 4, 2010, the United States Bankruptcy Court for the Southern

District of Texas transferred venue of a removed state court lawsuit, which involved Wheeler

Hospitality, Inc., Decatur Hospitality, Inc., Borger Properties, Inc. and Borger Hospitality, Inc.,

to this Court.  The case was transferred into this Court as Adversary Proceeding No. 10-02022,

the current pending adversary proceeding.

11.      On November 15, 2010, the plaintiffs involved in the transferred Adversary

- 3 -

Proceeding No. 10-02022 filed their *Plaintiffs' Motion to Set Hearing on Pending State Court Motions and Brief in Support Thereof* [Docket No. 8], seeking this Court to vacate and set aside the *Final Judgment* ("Default Judgment") taken in Cause No. 09-01-00563 in the case styled *Borger Properties, Inc., et al, Plaintiffs, v. Auer Corporation, et al., Defendants* in the District Court of the 9th Judicial District of Montgomery County by defendants Auer and Teague prior to such case's removal to the United States Bankruptcy Court for the Southern District of Texas.

12.     On December 17, 2010, the plaintiffs involved in the transferred adversary proceeding filed their *Plaintiffs' First Amended Motion to Set Hearing on Pending State Court Motions and, Alternatively, Motion for Relief Under Fed. R. Civ. P. 60(b)* [Docket No. 13], along with a brief in support thereof [Docket No. 14].

13.     On March 24, 2011, after an evidentiary hearing, the Court ordered that the Default Judgment be vacated and set aside [Docket No. 30].

14.     On April 18, 2011, upon prior motion by plaintiffs [Docket No. 5], the Court entered an *Agreed Consolidation Order* [Docket No. 36], whereby it consolidated Adversary Proceeding No. 10-02003, Adversary Proceeding No. 10-02004, Adversary Proceeding No. 10-02005, and Adversary Proceeding No. 10-02006 into lead Adversary Proceeding No. 10-02022, the current pending "Adversary Proceeding."

15.     On May 6, 2011, plaintiffs filed a consolidated complaint [Docket No. 39] as required by the Agreed Consolidation Order.

16.     On October 20, 2011, following plaintiffs' filing of a motion to compel a responsive pleading by the defendants [Docket No. 54] and the Court ordering defendants to so respond [Docket No. 56], defendants Auer and Teague filed individual answers [Docket Nos. 63

and 64] to the plaintiffs' consolidated complaint.

*Auer's/Teague's Proofs of Claims*

17.     On July 9, 2010, Auer filed the following proofs of claims: Claim No. 11 in the *Wheeler Hospitality, Inc.* bankruptcy case [Case No. 10-20166] in the amount of $25,221,693.79, further asserting its claim was secured in the amount of $446,161.86; Claim No. 13 in the *Decatur Hospitality, Inc.* bankruptcy case [Case No. 10-20171] in the amount of $25,221,693.79, further asserting its claim was secured in the amount of $1,900,661; Claim No. 15 in the *Borger Properties, Inc.* bankruptcy case [Case No. 10-20168] in the amount of $25,571,125.06, further asserting its claim was secured in the amount of $1,650,568.73; and Claim No. 16 in the *Borger Hospitality, Inc.* bankruptcy case [Case No. 10-20170] in the amount of $23,163,517.79, further asserting its claim was secured in the amount of $2,058,176.

18.     On the same date, July 9, 2010, Teague filed the following proofs of claims: Claim No. 12 in the *Wheeler Hospitality, Inc.* bankruptcy case [Case No. 10-20166]; Claim No. 14 in the *Decatur Hospitality, Inc.* bankruptcy case [Case No. 10-20171]; Claim No. 13 in the *Borger Properties, Inc.* bankruptcy case [Case No. 10-20168]; Claim No. 14 in the *Borger Properties, Inc.* bankruptcy case [Case No. 10-20168]; and Claim No. 15 in the *Borger Hospitality, Inc.* bankruptcy case [Case No. 10-20170], all filed in the amount of $2,986,793.84 and listing "State Court Judgment" as the basis for these claims.

19.     On October 31, 2011, Auer, after the deadline for filing claims had passed over one year and three months earlier on July 15, 2010, filed a proof of claim [Claim No. 29-1, Case No. 10-20167] in the *Perryton Hospitality, Inc.* bankruptcy case in the amount of $421,675.34, asserting its entire claim was secured.

20.    On October 31, 2011, Auer filed an amended proof of claim [Claim No. 11-2, Case No. 10-20166] in the *Wheeler Hospitality, Inc.* bankruptcy case in the amount of $472,597.90, further asserting its claim was secured in the amount of $183,308.

*Objections to Claims*

21.    On May 7, 2012, Decatur Hospitality, Inc. filed objections to the proofs of claims of defendants Auer and Teague [Docket Nos. 59 and 60, Case No. 10-20171].

22.    On May 7, 2012, Borger Properties, Inc. filed objections to the proofs of claims of defendants Auer and Teague [Docket Nos. 64, 65, and 66; Case No. 10-20168].

23.    On May 7, 2012, Borger Hospitality, Inc. filed objections to the proofs of claims of defendants Auer and Teague [Docket Nos. 73 and 74, Case No. 10-20170].

24.    On May 29, 2012, Wheeler Hospitality, Inc. filed an objection to the proof of claim of defendant Teague [Docket No. 602, Case No. 10-20166].

25.    On May 29, 2012, Wheeler Hospitality, Inc. filed an objection to the amended proof of claim of defendant Auer [Docket No. 603, Case No. 10-20166].

26.    On June 1, 2012, Perryton Hospitality, Inc. filed an objection to the disputed, unsecured claim of defendant Auer [Docket No. 75, Case No.10-20167] .

27.    On June 11, 2012, Auer filed a response to Borger Properties, Inc.'s objection to the claim of Auer [Docket No. 84, Case No. 10-20168].

28.    On June 11, 2012, Auer filed a response to Borger Hospitality, Inc.'s objection to the claim of Auer [Docket No. 108, Case No. 10-20170].

29.    On June 11, 2012, Auer filed a response to Decatur Hospitality, Inc.'s objection to the claim of Auer [Docket No. 78, Case No. 10-20171].

30.     On June 11, 2012, Auer filed a response to Perryton Hospitality, Inc.'s objection to the claim of Auer [Docket No. 95, Case No. 10-20167].

31.     On June 11, 2012, Auer filed a response to Wheeler Hospitality, Inc.'s objection to the claim of Auer [Docket No. 618, Case No. 10-20166].

### *Disallowance of Teague's Claims*

32.     On June 25, 2012, the Court entered an order [Docket No. 85, Case No. 10-20171] disallowing Teague's claim in its entirety.

33.     On June 26, 2012, the Court entered its orders [Docket Nos. 93 and 94, Case No. 10-20168] disallowing Teague's claims in their entireties.

34.     On June 26, 2012, the Court entered an order [Docket No. 84, Case No. 10-20169] disallowing Teague's claim in its entirety.

35.     On June 26, 2012, the Court entered an order [Docket No. 140, Case No. 10-20170] disallowing Teague's claim in its entirety.

36.     On July 12, 2012, the Court entered an Order [Docket No. 645, Case No. 10-20166] disallowing Teague's claim in its entirety.

### *Joining for Trial*

37.     On June 28, 2012, the Court entered an order [Docket No. 86, Case No. 10-20171] joining Decatur Hospitality, Inc.'s objection to Auer's claim with trial of this Adversary Proceeding.

38.     On June 28, 2012, the Court entered an order [Docket No. 97, Case No. 10-20168] joining Borger Properties, Inc.'s objection to Auer's claim with trial of this Adversary Proceeding.

- 7 -

39.     On June 28, 2012, the Court entered an order [Docket No. 141, Case No. 10-20170] joining Borger Hospitality, Inc.'s objection to Auer's claim with trial of this Adversary Proceeding.

40.     On June 28, 2012, the Court entered an order [Docket No. 85, Case No. 10-20169] joining Childress Hospitality, L.P.'s objection to Auer's claim with trial of this Adversary Proceeding.

41.     On July 3, 2012, the Court entered an order [Docket No. 634, Case No. 10-20166] joining Wheeler Hospitality, Inc.'s objection to Auer's claim with trial of this Adversary Proceeding.

42.     On July 12, 2012, the Court entered an order [Docket No. 115, Case No. 10-20167] joining Perryton Hospitality, Inc.'s objection to Auer's claim with trial of this Adversary Proceeding.

*Confirmation of Plans*

43.     On March 30, 2012, the Court entered an order confirming the chapter 11 plan of Wheeler Hospitality, Inc. [Docket No. 518, Case No. 10-20166].

44.     On April 3, 2012, the Court entered an order confirming the chapter 11 plan of Perryton Hospitality, Inc. [Docket No. 522, Case No. 10-20166].

45.     On August 23, 2012, the Court entered an order confirming the chapter 11 plan of Borger Hospitality, Inc. [Docket No. 198, Case No. 10-20170].

46.     On January 30, 2013,  the Court entered an order confirming the chapter 11 plan of Borger Properties, Inc. [Docket No. 148, Case No. 10-20168].

**B.     The Hotels and Hotel Entities**

*Wheeler Hospitality, Inc. – The Wheeler Hotel*

47.     On June 21, 2007, Auer entered into a standard AIA contract with Toli, Inc. ("Wheeler Contract") for the construction of a Baymont Inn & Suites hotel in Wheeler, Texas ("Wheeler Hotel").  The Wheeler Contract recites that Toli, Inc. is the owner and Auer is the general contractor.  *See* Exhibit W-1.

48.     The contract amount for the Wheeler Hotel was $2,476,000, with approved change orders of $48,997.80; the total contract amount therefore was $2,524,997.80.  According to Auer, Wheeler Hospitality, Inc. paid Auer $2,078,836.  *See* Exhibit W-5.

49.     The March 31, 2008 change order on the Wheeler Hotel identified Toli, Inc. as the owner on the project.  *See* Exhibit W-2.

50.     A dispute arose in early September 2008 concerning the Wheeler Hotel.  Auer, through Teague, claimed it was owed approximately $79,000 for work of subcontractors engaged by Auer.  Patel disputed this and the parties reached an agreement for Wheeler Hospitality, Inc. to pay $50,000 to resolve the matter.  Wheeler Hospitality, Inc. paid the $50,000, which was accepted by Auer, and the Wheeler Contract was considered "paid off."

51.     In November 2008, Auer filed a mechanics lien against the Wheeler Hotel reflecting an amount owing of $183,308.  Auer identified Wheeler Hospitality, Inc. as the owner of the Wheeler Hotel when it filed its mechanics lien on the Wheeler Hotel.

52.     Subcontractors of Auer filed approximately $92,000 in mechanics liens against the project, some of which were the same as the mechanics and suppliers identified by Auer in connection with the dispute that arose in September 2008.

53. Though the Wheeler Contract was ostensibly fully paid, there was, as a result of Auer's mechanics lien and the liens of subcontractors, in excess of $275,000 in mechanics liens filed on the Wheeler Hotel.

54. Auer filed the Auer lien with the intent that the document be given the same legal effect as a document of a court evidencing a valid lien.

55. Auer failed to credit a $344,284 payment made on December 6, 2007, on the Wheeler Hotel. Auer's claims for both the balance of $446,161.80 and $183,308 mechanics lien were therefore incorrect.

56. The $50,000 settlement check was made in "Final Payment" on the Wheeler Contract. There was nothing further owed by Wheeler Hospitality, Inc. to Auer after such payment.

57. Patel testified that Toli, Inc. was the "agent" for Wheeler Hospitality, Inc. The Wheeler Contract does not reflect Toli, Inc. as the agent, however. The Wheeler Contract was not assigned to Wheeler Hospitality, Inc.

58. Patel, personally, purchased the land used for the hotel and then apparently transferred the land to Wheeler Hospitality, Inc. Wheeler Hospitality, Inc. was formed in January 2007, several months prior to the Wheeler Contract. Wheeler Hospitality, Inc. obtained the financing for the construction of the hotel, and it made all payments to Auer on the construction.

59. Teague knew that Wheeler Hospitality, Inc. owned the land where the Wheeler Hotel was to be constructed; he also knew all payments to Auer were made by Wheeler Hospitality, Inc.

60. According to the Wheeler Contract, the date of commencement of construction

- 10 -

was June 22, 2007.

61.     The Wheeler Contract allowed for 240 days to complete construction, which would require substantial completion by February 17, 2008.

62.     The hotel was not completed within the 240 days required by the contract.  It was certified ready for occupancy on May 19, 2008, which was 91 days after the contemplated completion date of the contract.  The start date was, at least once, adjusted forward by 10 days, however.

63.     The Wheeler Contract provided for liquidated damages in the amount of $500 per day for each day completion exceeded the substantial completion date.

64.     Patel testified that the problems with the Wheeler Hotel were not caused by any delays in payment on Wheeler Hospitality, Inc.'s part, but by mismanagement or lack of management and supervision by Auer as the general contractor.

65.     Concerning draw requests, the architect for the project certified that the work was progressing and had been completed per the requests.  This included work on installation of insulation.

66.     The repair work for the Wheeler Hotel occurred in 2011, more than two and a half years after completion of Auer's work on the hotel.  Notices of the specific construction defects were not made to Auer in accordance with the Wheeler Contract.

67.     Wheeler Hospitality, Inc. spent over $197,000 in making repairs to the Wheeler Hotel.  *See* Exhibits W-11, W-20.

68.     Teague admitted that the Wheeler Hotel was not built within the 240 days required under the contract.  He could not recall why it took Auer well beyond the 240 days to

complete the hotel.

69.     There were many problems with the construction of the Wheeler Hotel.  There was not sufficient insulation between the walls or between the ceilings and the floors, as well as in the attic.  As a result of the inadequate insulation in the attic, the sprinkler pipe froze sometime in 2011, causing flooding and water damage to the hotel.  Another problem concerned the walkways on the second and third floors of the hotel, which were not adequately braced, causing excess noise and a swaying sensation when patrons walked through the walkways.

70.     Wheeler Hospitality, Inc. properly withheld retainage in the amount of $72,880 to satisfy outstanding claims made by unpaid subcontractors and suppliers.

71.     At trial, Teague testified that Auer was asserting a mechanics lien claim against the Wheeler Hotel in the amount of $72,880, with total contract damages of $183,000.  No pleadings were filed providing notice of this claim.  In addition, apart from Teague's conclusory testimony, no evidence was offered in support of such claim by Auer.

### *Perryton Hospitality, Inc. – The Perryton Hotel*

72.     On June 21, 2007, Auer entered into a standard AIA contract with Toli, Inc. ("Perryton Contract") for the construction of a Baymont Inn & Suites hotel in Perryton, Texas ("Perryton Hotel").  The Perryton Contract identified Auer as the general contractor and Toli, Inc. as the owner.

73.     Perryton Hospitality, Inc. is not identified as a party to the contract, though it was in existence at the time the contract was entered into.

74.     Toli, Inc. is not named under the contract as agent for Perryton Hospitality, Inc. The Perryton Contract was not assigned to Perryton Hospitality, Inc.

75.     The contract sum for the Perryton Hotel was $2,850,000.

76.     The only signed change order on the Perryton Hotel was submitted on September 1, 2008 for the sum of $13,000, which included past changes in the amount of $31,313.75, for a total of $44,313.75.

77.     The total contract sum on the Perryton Contract, including the signed change order and previous amounts included within such change order, was $2,894,313.75.

78.     According to Auer's transaction detail, the contract sum for the Perryton Hotel was $2,850,000, with $185,480.10 in change orders; the total contract sum was $3,035,480.10. *See* Exhibit P-5.  Auer also asserted a mechanics lien of $388,934.34.  *Id*.  Perryton Hospitality, Inc. paid Auer $2,754,576.  Auer's payment applications, however, reflect that there were no change orders and that it had been paid all sums owing under the contract.

79.     Auer filed a mechanics lien on the Perryton Hotel on November 17, 2008 in the amount of $388,934.34.  Auer identified Perryton Hospitality, Inc. as the owner of the Perryton Hotel when filing its mechanics lien on the Perryton Hotel.  *See* Exhibit P-6.

80.     Teague admitted that he had no documents reflecting charges underlying its mechanics lien claim of $388,934.34 or the mechanics lien claim of its subcontractors of over $289,000.

81.     Teague admitted that the work was done for Perryton Hospitality, Inc.; he admitted that he filed a mechanics lien claim against Perryton Hospitality, Inc. as owner.

82.     Auer was paid a total of $2,754,576 on the Perryton Contract.

83.     Perryton Hospitality, Inc. was the entity that owned the land upon which the Perryton Hotel was built and also was the entity that obtained construction financing and made all payments to Auer on the Perryton Contract.

- 13 -

84.      Subcontractors of Auer filed mechanics liens of $289,718.83.

85.      According to the Perryton Contract, the date of commencement of construction was June 22, 2007.

86.      The Perryton Contract allowed for 240 days to complete construction, which would require substantial completion by February 17, 2008.

87.      The certificate of occupancy was issued on September 25, 2008, which was 220 days after the required completion date.  *See* Exhibit P-10.  The Notice of Completion for the project reflects a completion date of July 11, 2008.  *See* Exhibit P-9.

88.      The Perryton Hotel was not completed within the 240 days provided for under the Perryton Contract.  Teague testified that the delays were due to problems with the weather, labor, and materials.  He could offer no specifics concerning these issues.

89.      The Perryton Contract provided for liquidated damages in the amount of $500 per day for each day completion exceeded the substantial completion date.

90.      There were multiple construction defects and other problems with the Perryton Hotel.  Multiple items of personal property—furniture, appliances, and fixtures—were left outside for several weeks and exposed to the weather.  The landscaping was not completed.  There were significant problems concerning the construction in the following areas: the drainage system; the installation of the shingles; the installation of insulation; the basic construction of the walls, ceilings, and the foundation; the electrical system; and the plumbing.  An inadequate dehumidifier was installed for the indoor swimming pool room.

91.      Perryton Hospitality, Inc. spent $216,393 for repairs to the hotel.

92.      The vast majority of the repairs to the Perryton Hotel were performed and paid for

from early 2010 through June 2012.

93.     Perryton Hospitality, Inc. (or Toli, Inc.) did not provide formal notice of specific, itemized claims to Auer or the architect on the project, as contemplated by the Perryton Contract. *See* Exhibit P-1 at Addendum 12.2.2.

94.     Draw requests were approved with the work certified as completed. *See* Exhibit P-3.

95.     Teague did not file a proof of claim in the *Perryton Hospitality, Inc.* bankruptcy proceeding.

96.     At trial, Teague testified that Auer was asserting a mechanics lien claim against the Perryton Hotel in the amount of $106,675, with total contract damages of $139,737.75. No pleadings were filed providing notice of this claim. In addition, no evidence, apart from Teague's conclusory testimony, was offered in support of Auer's "amended" claim amounts.

### *Decatur Hospitality, Inc.– The Decatur Hotel*

97.     On March 1, 2008 Auer entered into a standard AIA contract with Decatur Hospitality, Inc. ("Decatur Contract") for the construction of a Baymont Inn & Suites hotel in Decatur, Texas ("Decatur Hotel").

98.     The contract sum for the Decatur Hotel was $2,999,000.

99.     There were no valid and authorized change orders on the Decatur Hotel.

100.     Decatur Hospitality, Inc. paid $1,563,014 to Auer on the Decatur Contract. Decatur Hospitality, Inc. had demanded releases of liens by subcontractors for work paid for.

101.     According to Auer's transaction detail, Decatur Hospitality, Inc. paid Auer $1,403,677.

102. On February 12, 2009, Auer filed a mechanics lien against the Decatur Hotel for $1,600,661.

103. Subcontractors to Auer filed mechanics liens of approximately $410,000; Teague had no explanation for this.

104. Auer filed the Auer lien with the intent that the document be given the same legal effect as a document of a court evidencing a valid lien.

105. According to the Decatur Contract, the date of commencement of construction was March 1, 2008.

106. The Decatur Contract allowed for 270 days to complete construction, which would require substantial completion by November 26, 2008.

107. Auer left the job in late December 2008, early January 2009. At that time, the hotel was approximately 40 to 50% complete.

108. The Decatur Contract provides for liquidated damages in the amount of $500 per day for each day completion exceeds the substantial completion date. Substantial completion occurred on May 10, 2010; the Decatur Hotel was completed 530 days after the completion date contemplated by the Decatur Contract.

109. The hotel was completed by Liberty Construction Company. The cost to complete the hotel was $2,989,696.

110. Auer provided notice of its claim that Decatur Hospitality, Inc. had not made required payments for work performed. *See* Defendants' Exhibit 25.

111. Apart from a few electrical problems, there were no major problems with the construction of the Decatur Hotel.

112.    Teague certified that Auer had performed approximately 65% of the work before it left the job in late December 2008, early January 2009.

113.    Auer claims it performed and billed work of $2,021,000. At trial, Auer asserted its claim for contract damages of approximately $1,595,000, including a mechanics lien claim of approximately $617,000. It therefore requested allowance of a secured claim of $617,000 and an unsecured claim of $977,000. No proof of claim and no pleadings were filed by Auer for such amounts.

114.    Teague acquired a 10% interest in Decatur Hospitality, Inc. from a $110,000 capital contribution. He also personally guaranteed the loan to Decatur Hospitality, Inc. for construction of the Decatur Hotel.

### *Borger Properties, Inc. – The Borger Hotel*

115.    On November 26, 2007, Auer entered into a standard AIA contract with Borger Properties, Inc. ("Borger Contract") for the construction of a Hampton Inn & Suites hotel in Borger, Texas ("Borger Hotel"). Borger Properties, Inc. was handwritten in to correct Borger Hospitality, Inc. as "owner" under the contract. Borger Properties, Inc. owns the Borger Hotel.

116.    The contract sum for the Borger Hotel was $4,197,359.

117.    There were 3 valid and authorized change orders on the Borger Hotel, which change orders totaled $79,178.97; inclusive of the change orders, the total contract sum on the Borger Contract was $4,276,537.97.

118.    The change orders for the project were approved by Patel for Borger Properties, Inc.

119.    Upon draw requests from Auer, Borger Properties, Inc. paid Auer $3,097,969.24,

approximately 72% of the total contract amount.

120.    Auer filed a mechanics lien against the Borger Hotel for $1,428,568.73, which, according to Auer, was the balance owed to it on the contract.  The mechanics lien included charges for January and February of 2009, at which time Auer had already left the project.

121.    Subcontractors to Auer filed mechanics liens against the Borger Hotel in the amount of approximately $324,000.

122.    Auer filed the Auer lien with the intent that the document be given the same legal effect as a document of a court evidencing a valid lien.

123.    According to the Borger Contract, the date of commencement of construction was December 1, 2007, with a completion date of August 31, 2008.  *See* Exhibit BP-1 § 3.1.

124.    The parties stipulated that the time for substantial completion pursuant to the Borger Contract was November 26, 2008.

125.    Auer left the job late December 2008, early January 2009.

126.    The Borger Hotel was not completed until May 10, 2011; it took an additional 1,218 days to complete the hotel.  Applying a liquidated damages provision of the contract of $500 per day, such damages are $609,000.

127.    There were significant problems with the construction of the hotel that are attributable to the work performed by Auer.  A sewer odor led to a hydrostatic test that revealed that the joints in the sewer line were not sealed; instead, some had been assembled using duct tape.  It took four weeks to break-out the main concrete walkway to access the main sewer line; it took three weeks to refill the trench after the joints were secured.  The wrong gauge was used for electrical cables.  The sheet rock had to be removed to access the cables for installation of the

- 18 -

appropriate gauge for electrical cables.  The hotel had many other problems: stairs in the stairwells of the wrong size; missing or improper support beams in common areas, such as the swimming-pool room; a paved approach at the wrong grade; and a retaining wall extending onto adjacent property not owned by Borger Properties, Inc.  The concrete slab under the breakfast area was too thin, and the pool area was not framed in accordance with the plans.  There was insufficient drainage for the roof, thereby compromising the integrity of the roof.  The drainage for the roof did not comply with the plans for the Borger Hotel.

128.    Borger Properties, Inc. paid a third party contractor, Liberty Construction, $890,000 to assist in completing the construction of the hotel.  *See* Exhibit BP-11 § 4.1.  Borger Properties, Inc. incurred an additional sum in excess of $3 million to complete the project.  *See* Exhibit BP-15.

129.    At the time Auer left the project, it had completed approximately 65% of the contract, but it had been paid approximately 75% of the contract sum.

130.    The additional cost to complete the construction of the Borger Hotel was $2,731,698.54.  *See* Exhibit BP-15.

131.    By letter dated December 3, 2008, from Auer to Borger Properties, Inc., Auer advised Borger Properties, Inc. that it would not "accept, store or of [*sic*] load any FF&E products on behalf of Borger Properties Inc."  Exhibit BP-9.  The letter further stated that Auer was "only responsible for the labor to install owner provided FF&E into the building."  *Id.*

132.    By letter dated January 19, 2009, from Teague on behalf of Auer to Borger Properties, Inc., Teague made demand for payments due under submissions made on December 3, 2008, and January 6, 2009, respectively.  The letter states that under subsection 9.7.1 of the

- 19 -

contract, Auer could "stop work" if payments were not received by January 26, 2009.  *See* Exhibit BP-9.

133.    At trial, Teague, for Auer, amended Auer's mechanics lien claims.  He in effect changed Auer's claims to the amount of the difference between the work allegedly performed by Auer for which draw requests were made and the amount Auer was paid on the draw request. This difference was $321,782.81 ($3,419,752.05 in draw requests less payments of $3,097,969.24).  He also amended his asserted contract damages to the amount of $1,105,486, the approximate difference between the contract sum and the amount paid to Auer under the contract.

134.    No pleadings were filed providing notice of this claim, and no evidence, apart from Teague's conclusory testimony, was offered in support of Auer's "amended" claim.

### *Borger Hospitality, Inc. – The Snyder Hotel and The Stanton Hotel*

#### *The Snyder Hotel*

135.    On July 24, 2007 Auer entered into a standard AIA contract with Toli, Inc. ("Snyder Contract") for the construction of a Baymont Inn & Suites hotel in Snyder, Texas ("Snyder Hotel").  Borger Hospitality, Inc. was subsequently written in by Teague to replace Toli, Inc. as the contracting party.

136.    The parties stipulated that the contract sum for the Snyder Hotel was $2,750,000.

137.    There was one valid and authorized change order on the Snyder Hotel in the amount of $71,000.  The total contract sum on the Snyder Contract was $2,821,000.

138.    Auer was paid a total of $1,395,726 on the Snyder Contract.

139.    Auer filed a mechanics lien on the Snyder Hotel on November 24, 2008, in the amount of $1,425,274.

140.    Auer identified Borger Hospitality, Inc. as the owner of the Snyder Hotel when filing its mechanics lien on the Snyder Hotel.

141.    According to Auer's transaction detail, Borger Hospitality, Inc. paid Auer $1,395,726 for Auer's work on the project.  Auer then claimed it was owed the difference between the total contract amount, with change orders, of $2,821,000 less the $1,395,726, which was $1,425,274.  This difference also represents the amount of Auer's mechanics lien.

142.    Auer and Teague filed the Auer lien with the intent that the document be given the same legal affect as a document of a court evidencing a valid lien.

143.    Subcontractors to Auer filed mechanics liens against the Snyder Hotel in the amount of $270,628.31.

144.    According to the Snyder Contract, the date of commencement of construction was August 15, 2007.

145.    When Auer left the job in late December 2008, early January 2009, the hotel was approximately 41% complete.

146.    The Snyder Contract allowed for 240 days to complete construction, which would require substantial completion by June 15, 2008.

147.    The construction of the Snyder Hotel was completed on May 22, 2009, 341 days past the required completion date of June 15, 2008.  Liquidated damages under the contract at $500 per day resulted in liquidated damages of $170,500.

148.    Borger Hospitality, Inc. employed a third party contractor, Patriot Construction,

to assist in completing the project. Borger Hospitality, Inc. paid a total of $3,204,287.15 for construction of the hotel. It had cost overruns of $383,287.15.

149.     At trial, Teague testified that Auer was asserting a mechanics lien claim of $224,596, with total contract damages of $1,425,474. No pleadings were filed providing notice of Auer's "amended" claim.

### The Stanton Hotel

150.     On July 24, 2007 Auer entered into a standard AIA contract with Toli, Inc. ("Stanton Contract") for the construction of a Baymont Inn & Suites hotel in Stanton, Texas ("Stanton Hotel"). The Stanton Hotel contract was entered into between Auer and Toli, Inc., though Patel testified that he intended for Borger Hospitality, Inc. to be the named party to the contract. He further testified that he requested Teague make this change to the Stanton Contract.

151.     The contract sum for the Stanton Hotel was $2,750,000, with approximately $50,000 in change orders.

152.     Auer submitted total draw requests of $2,400,798, for which it was paid.

153.     Though mechanics liens were filed against the project, Borger Hospitality, Inc. could not salvage the project and the Stanton Hotel was foreclosed by the secured lender on the hotel.

154.     The Stanton Hotel contract was ostensibly between Auer and Toli, Inc., but Teague admitted that he knew Toli, Inc. was not the owner of the Stanton Hotel property and that Borger Hospitality, Inc. was the owner.

155.     Auer attempted to file a mechanics lien against the Stanton Hotel but filed it in the wrong county. Auer identified Borger Hospitality, Inc. as the owner of the Stanton Hotel

when filing its mechanics lien on the Stanton Hotel.

156.    According to the Stanton Contract, the date of commencement of construction was August 15, 2007.

157.    The Stanton Contract allowed for 240 days to complete construction, which would require substantial completion by June 15, 2008.

158.    The draw requests submitted by Auer for the Stanton Hotel indicated that the hotel was 80% complete.  This was not true; it was significantly less than 80% complete.  For example, a draw request for $42,000 was made for a "completed" swimming pool and spa.  In fact, they were not close to completion.

159.    Borger Hospitality, Inc. paid $850,000 to a third party contractor to assist in completion of the hotel.  Borger Hospitality, Inc. expended a total of $3,770,000 to complete the hotel; this exceeded the contract amount by $969,000.

160.    The hotel was completed 842 days past the contract completion date.  The liquidated damages as a result of this are $421,000.

161.    At trial, Teague testified that Auer was asserting contract damages of $400,152.  No pleadings were filed providing notice of this claim, and no evidence apart from conclusory testimony by Teague was offered in support of this claim.

162.    Teague testified that Patel requested that Teague (for Auer) submit draw requests on the Stanton Hotel as a way to obtain funds from the lender for use on another hotel of Patel's in Greenville, Texas.  He testified that this was also done in connection with the Childress Hotel.  In effect, he said Patel diverted funds for payment on projects not subject of the particular loan.  This testimony was not disputed by Patel.  Teague admitted that he was complicit with Patel in

the diversion of such funds.

**C.     Toli, Inc.**

163.    On November 27, 2011, Auer filed a proof of claim in the *Toli, Inc.* bankruptcy case [Claim No. 2-2, Case No. 10-20274], in the amount of $2,989,691.93. *See* Defendants' Exhibit 2. The claim amended a prior proof of claim [Claim No. 2-1, Case No. 10-20274] filed July 9, 2010. The original claim stated it arose from a "State Court Judgment."

164.    The Auer claim in the *Toli, Inc.* case was subject of a motion to compromise between Auer and the chapter 7 trustee, Kent Ries. *See Motion to Compromise Claim 2 of Auer Corp.* ("Motion to Compromise") [Docket No. 79, Case No. 10-20274]. The claim was originally filed for $25,221,693.79 [Claim No. 2-1, Case No. 10-20274] and was based solely on the Default Judgment. The Motion to Compromise was filed December 22, 2011, almost a month *after* Auer's amended claim was filed.

165.    Toli, Inc., Wheeler Hospitality, Inc., Perryton Hospitality, Inc., Childress Hospitality, L.P., and Borger Hospitality, Inc. filed a joint objection to the Motion to Compromise.

166.    On February 14, 2012, the Court issued its order [Docket No. 96, Case No. 10-20274] approving the "compromise" as set forth in the Motion to Compromise. The Hotel Entities and Childress Hospitality, L.P. had withdrawn their joint objection.

167.    As a result of the so-called compromise, Ries, as chapter 7 trustee of *Toli, Inc.*, dismissed Toli, Inc.'s claims against Auer and Teague in this adversary proceeding.


**D.     Other Facts**

168.     Patel was the principal of each of the Hotel Entities; he was also the owner and principal of Toli, Inc. Prior to his involvement with Teague and Auer, he had constructed and operated approximately eleven hotels, beginning in 1991. These included a small 24-unit hotel in Shamrock, Texas; a Holiday Inn Express in Childress, Texas; multiple Best Western hotels, a couple of which were located in Quanah and Wichita Falls, Texas; and a Comfort Inn in Roanoke, Texas. Patel testified that each of these hotels were built in accordance with the plans and specifications and within the time frame provided for under the respective contracts.

169.     Teague is the principal of Auer. Patel had never used Auer prior to the construction of the seven hotels here. Patel first met with Teague in March of 2007, at which time he presented Teague with the plans and specifications for the Wheeler and Perryton hotels. Teague represented to Patel that his company, Auer, had done several prior construction projects and they had been completed on time and without significant change orders.

170.     Each contract was for a stipulated, definite sum; they were not based on a "cost-plus" formula.

171.     When asked whether the mechanics liens filed by Auer against the various hotels, each of which was improperly based on the difference between the contract price and what Auer was paid (and thus not based on the value of the materials and services actually provided by Auer), were being sought against the Hotel Entities, Teague simply responded, "I don't know."

172.     Auer, as general contractor, submitted draw requests for work performed to the owner under the respective contracts. The Hotel Entities, as owners, then certified such requests to its lenders for funding to pay the requests.

173.     The architect for certain of the projects was Terry Brewer ("Brewer"). Brewer

credibly testified concerning certain failures on Auer's part to construct the hotels in accordance with the plans and specifications.  Brewer was not involved in the actual construction of the hotels, however.  He did approve draw requests of Auer but generally did not confirm, by on-site inspection, the actual work performed as reflected by the draw requests.  He reviewed the purported progress of the work as reflected by the draw requests, and if the progress of the work was proceeding as contemplated by the contract, he approved the requests for payment.

174.    Brewer did not generally check the adequacy of the construction as work progressed.  He was, however, asked by Patel and the financing bank to specifically review the progress of the Decatur project a few months after the project began.  He discovered that lien releases from subcontractors were needed based on work purportedly performed and paid for.  He conferred with Patel and the bank regarding this, but not directly with Teague or Auer.  He also pointed out defects in electrical work performed by Auer or its subcontractors that was not done in compliance with the plans and specifications.

175.    The construction of the hotels failed in many respects to comply with the standard requirements of the Americans with Disabilities Act.  Defects in the construction of the Wheeler Hotel included the following: installation of a sidewalk at the wrong grade and thus not adequately accessible; insufficient maneuvering space at entry doors and entry ways; toilets in guest rooms that were set too low; flush controls on the wrong side of toilets; lack of attached seats for handicap bathtubs; improper installation of bathtub grab bars; non-ADA compliant shower units; kitchen sinks placed at incorrect height; hanging bars in closets placed too high; and failure to install lighted door bells in handicap rooms.  All such requirements were set forth in the drawings and plans for the Wheeler Hotel.  Defects with respect to the Perryton Hotel included

the following: installation of an accessible sidewalk at the wrong grade; grab bars installed in the

wrong place in handicap bathrooms; inadequate clearance of the door into business center; failure

to install extended handrails on stairs; installation of bathtub grab bars in the wrong place;

placement of flush handles on the wrong side of toilets; placement of mirrors too high; failure to

install bathtub seats for handicap areas; sinks placed at the incorrect height; installation of shower

controls in the wrong place; and failure to install lighted door annunciators for hearing impaired

guests. All such requirements were set forth in the plans and specifications for the Perryton

Hotel.

176. On January 6, 2009, Wade Arnold, an attorney for the Hotel Entities, sent a

letter to Terry Joseph, an attorney for Auer, stating as follows:

> Your client the Auer Corporation ("Auer") entered into various
> construction contracts with [the Hotel Entities] for the construction of hotels
> located in the cities of Borger, Stanton, Snyder, Perryton, Wheeler, Decatur
> and Childress, TEXAS. By now you should have received service of several
> lawsuits which I have filed on behalf of the hotel owners and against Auer
> arising from Auer's breach of these construction contracts. The facts
> underlying each suit are basically the same: (1) Auer has abandoned each
> project and left them in an unfinished state; (2) Auer has filed large mechanics
> liens against some of these properties; (3) Auer has failed to pay numerous of
> the subcontractors which it retained on each project resulting in the filing of
> dozens of substantial liens against each property; and (4) Auer has been fully
> paid (and in some cases overpaid) for all work performed on the projects. My
> understanding is that Auer claims it has not been properly paid and that is the
> reason it has abandoned the projects. This does not make sense given the fact
> that each project is fully financed through a reputable lending institution, each
> of which has stood ready to fund any valid payment draws submitted by Auer
> with the proper lien releases.
> . . . .
> I have reviewed the draws which have been submitted by Auer on each
> respective project together with the payments issued by each particular
> lending entity. It is quite apparent that Auer has been fully paid for the work
> performed. This should have naturally resulted in payments by Auer to the
> subcontractors but that apparently has not happened. . . . Presently, the sums

owed to the subcontractors totals well into the hundreds of thousands of dollars.

. . . .

As a result of Auer's abandonment of these projects and its failure to pay the subcontractors [the Hotel Entities] ha[ve] been placed in an impossible position with its lenders. These projects are now well past the deadlines for completion, currently have no work being performed on them, and are faced with substantial subcontractor liens which were the responsibility of Auer to pay with the monies it had received. All of these facts have placed the financing for each project in serious jeopardy. Obviously, were any of these projects to lose its financing or go into foreclosure the damages would be in the millions of dollars.

. . . .

Below is a quick rundown of the status of each project as I believe it to be currently:

**Snyder**

The project has been abandoned by Auer and remains unfinished. It was to have been completed on June 15, 2008. The total contract price was $2.75 million. Auer has been paid over $1.3 million. There are several sub liens on the property which remain unpaid by Auer. [The Hotel Entities] ha[ve] hired a new contractor to finish this project.

**Stanton**

Auer has abandoned this project which remains only 50% complete. However, Auer has received approximately 82% of the total contract price. The contract price on this project was $2.75 million and Auer has been paid $2.4 million. The project was to be completed by June 15, 2008. Despite having received almost the entire contract price Auer has failed to pay its subs resulting in liens totaling over $200,000. There may also be an Auer lien on this property as well.

**Childress**

This property is simply a mess. Auer has abandoned it. [The] original contract price was $4.1 million and Auer has been paid $4,324,959.10. The project was to have been completed May 31, 2008 but the project remains unfinished. Even though it has been paid more than the total contract price Auer still filed a lien on the property on November 20, 2008 in the sum of $809,530.73.

**Perryton**

This project had a total contract price of $2.896 million and was to be completed by April 30, 2008. Auer has been fully paid on this project. Although open, the project remains unfinished and the punch list has not been completed. There are numerous sub liens filed on this project although Auer has been fully paid.

**Wheeler**

- 28 -

> Although this project has partially opened Auer has refused to perform any
> warranty work or punch list items necessary for substantial completion in
> accordance with the contract provisions.
> **Borger**
> This project remains unfinished and Auer has failed to deliver all lien releases
> as required by the contract.
> **Decatur**
> This project remains unfinished and Auer has failed to deliver all lien releases
> as required by the contract.

Exhibit D-4 at 12 (errors in original).

177.    Auer submits that the Arnold letter makes no demand on Auer to correct any

mistakes or to make any repairs; and that it makes no demand to correct any defects in the

construction.

178.    Teague testified that, with respect to the Stanton and Childress hotels, all work for

which draw requests were made was performed "somewhere."

179.    Teague acquired a 20% interest in Borger Properties, Inc. for two $150,000

capital contributions made to the company.  He was also a guarantor of the loan on the project.

180.    Teague acquired a 10% interest in Childress Hospitality, L.P. for a $150,000

capital contribution.

181.    Teague, as the principal of Auer, reviewed the plans for both the Wheeler and

Perryton hotels prior to making bids on the projects.  He represented that the work would be

done in a workman-like manner and in accordance with the specifications and proposed design.

He made the bids on all seven of the hotel projects under similar circumstances.

182.    Childress Hospitality, L.P. was the owner of one of the hotels constructed by

Auer under a standard AIA contract with Toli, Inc.  The problems associated with such

construction are relevant.  There were problems with the landscaping and the electrical

installation.  A plastic conduit pipe with a live electrical wire was installed above the ground in a

flower bed, creating a dangerous circumstance.  There were also exposed electrical lines on the

premises.  The laundry room did not have the required exhaust fan, and the enclosed pool area did

not have adequate fresh air circulation.

## II. CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

1.    The Court has jurisdiction over this complaint and the causes of action asserted

herein under 28 U.S.C. §§ 157(a) and (b) and 1334.

2.    The causes of action asserted herein are core proceedings under 28 U.S.C.

§ 157(b).  In the event a superior court determines that some or all of the causes of action here

are not core proceedings subject of the Court's jurisdiction, these findings and conclusions are

submitted as proposed findings and conclusions.  *See* 11 U.S.C. § 157(c)(1) and *Stern v.*

*Marshall*, --- U.S. ---, 131 S. Ct. 2594 (2011).

3.    Venue of this action is proper in this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

### B.    Claims of the Parties

4.    Each of the Hotel Entities claims that Auer breached the respective contracts; that

Auer's asserted mechanics liens are, in each instance, invalid as Auer was paid for all work

performed or, alternatively, that to the extent any amount was actually owing, the lien is invalid

because the lien amount exceeds the amount owing; that Auer's mechanics liens violate Texas

Civil Practice and Remedies Code § 12.01; that Auer must indemnify each of the Hotel Entities

against claims of subcontractors; that Auer's breaches of the contracts and its filing of fraudulent

liens entitles the Hotel Entities to attorneys' fees and costs; and that Auer's proofs of claim should be disallowed.

5.      The Hotel Entities also submit that Auer failed to plead any claims for affirmative relief and, thus, is not entitled to any affirmative relief outside its claims asserted by its proofs of claim.

6.      By the pretrial order, Auer (and Teague) simply states that "[t]his is a breach of contract case between a general contractor and the owner of several hotels." *Proposed Joint Pre-Trial Order* ("Pretrial Order") [Docket No. 118] at 15. Auer submits that all claims covering the Wheeler Hotel, the Perryton Hotel, the Snyder Hotel, the Childress Hotel, and the Stanton Hotel were resolved by Auer's settlement with Toli, Inc., which resulted in an allowed claim of $2,989,691.93 in the *Toli, Inc.* bankruptcy case. Pretrial Order at 15–16.

7.      With respect to the Borger Hotel and the Decatur Hotel, Auer claims it was not paid in accordance with the Borger Contract and the Decatur Contract, respectively, and thus asserts that such contracts were breached. Auer asked the Court to liquidate its claims against the two hotels and set the amount of its secured claims. *Id.* at 16.

8.      Auer does not state, in its statement of claims and defenses in the Pretrial Order, that the settlement of its claim in the *Toli, Inc.* bankruptcy case constitutes a bar or some form of estoppel concerning the claims of the Hotel Entities. As a contested issue of law, Auer submits whether any party other than Toli, Inc. has standing to raise contract claims concerning the contracts entered into between Auer and Toli, Inc. and whether all other parties—parties other than Toli, Inc.—are "stopped from relitigating the contract issues involving the construction and non-payment" of the Wheeler Hotel, the Perryton Hotel, the Childress Hotel, the Stanton Hotel,

and the Snyder Hotel. Pretrial Order at 66.

**C.    Pleading an Affirmative Defense**

9.     Bankruptcy Rule 7008(a) requires that a party affirmatively state any affirmative defenses, including res judicata and estoppel. Fed. R. Bankr. P. 7008(a) (making Fed. R. Civ. P. 8 applicable in adversary proceedings). A defendant waives any affirmative defense he does not plead. *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).

10.     Auer failed to plead res judicata or estoppel as affirmative defenses in its answer; it merely identified estoppel as a contested issue of law in the Pretrial Order. *See* Pretrial Order at 66. Litigants must state their claims and defenses in the pretrial order. N.D. Tex. L.B.R. 7016-1(a)(1). A pretrial order supersedes all other pleadings and governs the issues and evidence to be presented at trial. *See Rockwell Int'l Corp v. U.S.*, 549 U.S. 457, 474 (2007); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998). Inclusion of a new claim into the pretrial order amends the previous pleadings to state the new claim. *Syrie v. Knoll Int'l*, 748 F.2d 304, 308 (5th Cir. 1984).

11.     At trial, counsel for the Hotel Entities objected to Auer's attempts to raise the affirmative defense of estoppel.

12.     The Fifth Circuit has found that an affirmative defense is subject to the same pleading requirements as a complaint. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). An affirmative defense should be stated in a "simple, concise, and direct" manner. Fed. R. Civ. P. 8(d)(1). A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff "fair notice." *Woodfield*, 193 F.3d at 362. A plaintiff has fair notice when the defendant "sufficiently articulate[s] the defense so that the plaintiff [is] not a

victim of unfair surprise." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) (quoting *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993)).

13.     The Fifth Circuit and the Supreme Court of the United States have not addressed whether the plausibility standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, extends to the pleading of affirmative defenses.[1]   *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, No. 3:09-CV-572-L, 2011 WL 5025153, at *2 (N.D. Tex Oct. 20, 2011).  However, the rationale is applicable here because of the possible lack of adequate pleading.  Most courts have held that the plausibility standard applies to affirmative defense pleading.  *See E.E.O.C. v. Courtesy Bldg. Servs., Inc.*, No. 3:10-CV-1911-D, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) (noting that a majority of district courts apply *Twombly* and *Iqbal* to affirmative defenses).  The court in *Willins v. Credit Solutions of America* reasoned that affirmative defenses should be held to the standards of *Twombly* and *Iqbal* because of the Fifth Circuit's holding that affirmative defenses are subject to the same pleading requirements that apply to complaints.  *Willins v. Credit Solutions of Am., Inc.*, No. 3:09-cv-1025-M, 2010 WL 624899, at *1 (N.D. Tex. Feb. 23, 2010).

14.     In the Pretrial Order, Auer asserts that "[a]ll parties are stopped from relitigating the contract issues involving the construction and non-payment of" the Hotel Entities.  Pretrial Order at 66.  This claim was *not* made in the section of the Pretrial Order addressing claims and defenses; it was identified as a contested issue of law.  The Pretrial Order was filed on the eve of

---

[1]A pleading that is simply "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, *Iqbal* does not require detailed factual allegations, but it does require more than an assertion devoid of factual support.  556 U.S. at 678.

trial; it, therefore, raises questions of fair notice under the *Woodfield* standard. Additionally, to the extent the defense of estoppel is raised, it is done so wholly without factual support and thus fails the stringent plausibility standard of *Twombly* and *Iqbal*.

15.     Given these pleading issues, taken together, Auer did not adequately raise the affirmative defense of estoppel.

**D.    Merits of Estoppel Defenses**

16.     Though the Court has concluded that Auer failed to adequately raise the affirmative defense of estoppel (or estoppel-based defenses), it still addresses such defense on the merits.

17.     Res judicata is a judicial doctrine that encompasses two separate but related preclusive doctrines: true res judicata or claim preclusion and collateral estoppel or issue preclusion. *Test Masters Educ. Servs. Inc. v. Singh.*, 428 F.3d 559, 571 (5th Cir. 2005). Res judicata bars a second action involving the same parties or their privies based on the same cause of action after a judgment on the merits. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Collateral estoppel bars relitigation in a subsequent action of issues actually litigated and necessary to the outcome of the first action. *Id*. Because Auer was not clear in pleading either theory, the Court will evaluate both.

18.     Collateral estoppel serves to protect litigants from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation. *Id*. at 326. Collateral estoppel makes a court's previous decision on an issue or fact of law conclusive in a different cause of action involving a party to the prior action. *U.S. v. Mendoza*, 464 U.S. 154, 158 (1984). The Fifth Circuit has held that "[c]ollateral estoppel

applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399, 404 (5th Cir. 2008) (quoting *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc.*, 434 F.3d 320, 323 (5th Cir. 2005)).   Auer may place false hope on collateral estoppel because a party to a prior suit can assert collateral estoppel against a non-party.  *Robin Singh Educ. Servs. Inc.*, 274 F. App'x at 404.

19.     However, any reliance on Auer's part of collateral estoppel is misplaced because of the requirement that the issue actually be litigated.  A settlement generally does not give rise to collateral estoppel unless it is clear that the parties intend their agreement to have such an effect. *Ariz. v. Cal.*, 530 U.S. 392, 414 (2000), *supplemented*, 531 U.S. 1 (2000).  In *Arizona v. California*, the Supreme Court found that a consent judgment based on a settlement was not actually litigated.  *Id*.  The Court reasoned that when a judgment is entered by confession, consent, or default, none of the issues are actually litigated.  *Id*.  In *Avondale Shipyards, Inc. v. Insured Lloyd's*, the Fifth Circuit found that collateral estoppel could not be based on a consent judgment because the judgment "determined only that the settlement was not unfair . . . .  By no stretch of the imagination can that judgment be considered as any sort of adjudication or determination of [the issues]."  786 F.2d 1265, 1273 (5th Cir. 1986).

20.     Auer seeks to use collateral estoppel on a claim that has not been fully litigated. In the *Toli, Inc.* bankruptcy case, this Court approved the Motion to Compromise in the *Order Approving Motion to Compromise Claim 2 of Auer Corp.* ("Order Approving Motion to Compromise") [Docket No. 96, Case No. 10-20274].  This claim was not actually litigated before

the Court. Instead, this claim was compromised or settled like the claims in *Arizona v. California* and in *Avondale Shipyards* where the courts found that collateral estoppel could not be based on the settlements. The Court in the Order Approving Motion to Compromise does not address the issues. *See* Docket No. 96, Case No. 10-20274. Like in *Avondale Shipyards* where the court did not reach the issues, the Court simply approved the compromise. Therefore, the judgment upon which Auer relies for collateral estoppel was not actually litigated.

21.     It is possible for a judgment entered with the consent of the parties to involve a determination of fact and law by the court. *Ariz. v. Cal.*, 530 U.S. at 415. "But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." *Id.* at 415–16 (quoting *U.S. v. Int'l Bldg. Co.*, 345 U.S. 502, 505–06 (1953)). Auer has made no such showing. Moreover, the Motion to Compromise and the Order Approving Motion to Compromise show no such intent. *See* Docket Nos. 79 and 96, Case No. 10-20274.

22.     Because Auer's collateral estoppel affirmative defense is based on an issue that was not litigated and because Auer fails to show a determination of fact and law, Auer does not have a valid collateral estoppel affirmative defense.

23.     Further, the Hotel Entities were not a party to the first action. The use of collateral estoppel against a non-party "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)). In *Taylor v. Sturgell*, the Supreme Court reiterated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by

- 36 -

service of process." 553 U.S. at 893. However, the Supreme Court recognized exceptions to the

rule against non-party exclusion:

> First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." . . . .
>
> Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor . . . .
>
> Third, . . . "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries.
>
> Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered. Because such a person has had "the opportunity to present proofs and argument," he has already "had his day in court" even though he was not a formal party to the litigation.
>
> Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. And although our decisions have not addressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment.
>
> Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process."

*Id.* at 893–95 (citations omitted).

24. In addition to the above six established categories, the Supreme Court rejected a

broad doctrine of virtual representation, holding that a

> party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

*Id.* at 900 (citations omitted).

25.     Here, none of the six exceptions apply. Further, virtual representation does not apply. The interests of Toli, Inc. and the Hotel Entities are not aligned. While their interests may have been aligned at one time, Kent Ries, as chapter 7 trustee, operated Toli, Inc. at the time of the so-called compromise. Toli, Inc. did not protect the interests of the Hotel Entities. There is no adequate representation or virtual representation, and Auer cannot use collateral estoppel against the Hotel Entities, which were not parties to the original claim.

26.     Res judicata bars the relitigation of claims that have either been litigated or should have been brought in an earlier suit. *Test Masters Educ. Servs., Inc.*, 428 F.3d at 571. The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.* (citing *Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004)). Here, the problems lie with whether the parties are identical or in privity and whether there was a final judgment on the merits.

27.     The Court examines whether Auer's claim in the *Toli, Inc.* bankruptcy case was ever actually "compromised." Auer's proof of claim, as originally filed, was filed on July 9, 2010, in the amount of $25,221,693.79, stating it arises from the "State Court Judgment" [Claim No. 2-1, Case No. 10-20274]. The Court set aside such judgment well before Auer filed its proof of claim. The proof of claim was then amended on November 27, 2011, stating an amount of $2,989,691.93 [Claim No. 2-2, Case No. 10-20274]. The Motion to Compromise was filed on December 22, 2011, almost a month *after* the filing of the amended claim. From this simple chronology, the Court finds no real compromise. The parties—Auer and Toli, Inc.'s chapter 7

- 38 -

trustee—simply confirmed that the amended claim would be allowed.

**E.    Standing Under the Contracts**

28.    Auer submits that no party other than Toli, Inc. can enforce the contracts to which

Toli, Inc. is the named party.

29.    Generally, a third-party may not enforce a contract:

> The fact that a person might receive an incidental benefit from a contract to
> which he is not a party does not give that person a right of action to enforce the
> contract. A third party may recover on a contract made between other parties only if
> the parties intended to secure some benefit to that third party, and only if the
> contracting parties entered into the contract directly for the third party's benefit.
> In determining whether a third party can enforce a contract, the intention of
> the contracting parties is controlling. A court will not create a third party beneficiary
> contract by implication. The intention to contract or confer a direct benefit to a third
> party must be clearly and fully spelled out or enforcement by the third party must be
> denied. Consequently, a presumption exists that parties contracted for themselves
> unless it clearly appears that they intended a third party to benefit from the contract.

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899–900 (Tex. 2011),

*reh'g denied* (Oct. 21, 2011) (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995

S.W.2d 647, 651 (Tex. 1999)).  The contract does not need to have been executed solely to

benefit the third-party.  *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011).  Further,

the contract "need not state 'third-party beneficiary' or any similar magic words."  *Id*.

30.    In *Basic Capital Management*, the Texas Supreme Court found that two parent

corporations were third-party beneficiaries of a contract between a lender and nonexistent

subsidiaries.  348 S.W.3d at 901.  One of the parent corporations signed the contract for a loan to

nonexistent subsidiaries.  *Id*. at 897.  The contract stated that the borrower was the nonexistent

entity, but the signing parent corporation accepted the contract as the borrower.  *Id*.  Further, the

agreement contemplated the formation of subsidiaries to be owned by either the parent

corporation that signed the agreement or another associated parent corporation that did not sign the agreement. *Id*. These newly formed subsidiaries were to receive the loan funds as necessary; no parent corporation was to receive loan funds. *Id*. The court held that the contract and the evidence regarding its negotiation and purpose established that the parent corporations were third-party beneficiaries. *Id*. at 901. The court noted that the contracting parties' intention "must be ascertained from their agreement 'in the light of the attending circumstances.'" *Id*. at 901 n.24. Further, the court reasoned that if the lender did not intend for the contract to benefit the parent corporations, then the contract had no purpose because the parent corporations' roles were basic to the agreement. *Id*. at 900.

31. *Basic Capital Management* is a loosening of the third-party beneficiary standard from that previously set by the Texas Supreme Court in *MCI Telecommunications Company*, where the court required a clear indication from the contract that there was intent to have a third-party beneficiary. *MCI Telecomms. Corp.*, 995 S.W.2d at 652. Even after *Basic Capital Management*, some courts have continued to follow this stricter standard. *See EOG Res., Inc. v. Hurt*, 357 S.W.3d 144, 148 (Tex. App.—Fort Worth 2011).

32. Although the contracts between Auer and Toli, Inc. do not mention the Hotel Entities like the agreements in *Basic Capital Management* mention the parent corporations, the intent between the parties is still similar. This Court can look to the attending circumstances just as the court in *Basic Capital Management* did. These circumstances show that Auer was aware of the entities that actually owned the various hotels. Like in *Basic Capital Management*, where their intent had to be for the benefit of the parent corporations for the contract to have a purpose, the intent here had to be for the benefit of the Hotel Entities for the contracts to have a purpose.

Therefore, looking to the attending circumstances of the contracts, it is clear that the parties intended the Hotel Entities to be beneficiaries of the contracts between Auer and Toli, Inc.

33.     A third party may be able to enforce a contract when an agent entered into the contract on the party's behalf.  The contracts here require that any express designation of authority to bind the owner be in writing.  *See, e.g.*, Exhibit P-1 § 2.1.1.

34.     The Hotel Entities submit that if there was not a clear principal and agent relationship, then they ratified the contracts that Toli, Inc. ostensibly entered into.  "Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him."  *McWhorter v. Sheller*, 993 S.W.2d 781, 787 (Tex. App.—Houston [14th Dist.] 1999).  Ratification occurs when the individual for whom an act was done retains the benefits of the transaction after acquiring full knowledge of the transaction.  *Id*.  Although case law concerning ratifications occurs most frequently within an agency relationship, such a relationship is not necessary to cause the ratification to be effective.  *Id*. (citing *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex.App.—Houston [14th Dist.] 1996, writ denied)).  There must be proof of the ratification, and ratification may be implied from a course of conduct.  *Banctexas Allen Parkway v. Allied Am. Bank*, 694 S.W.2d 179, 181 (Tex. App.—Houston [14th Dist.] 1985) (citing *Petroleum Anchor Equip., Inc. v. Tyra*, 419 S.W.2d 829, 834 (Tex. 1967)).

35.     The Hotel Entities have each retained the benefits of their respective contracts, to the extent conducting a transaction with Auer had any actual benefits.  The Hotel Entities made the payments to Auer; Toli, Inc. did not make payments.  Auer accepted the payments.  When Auer filed mechanics liens, Auer filed the liens naming the Hotel Entities, not Toli, Inc.  *See, e.g.*,

Exhibits P-6, W-9, BH-5.  Such course of conduct shows that the Hotel Entities ratified the contracts that Toli, Inc. effectively entered into on their behalf.

36.     Finally, the contracts as between Auer and Toli, Inc. do not make sense.  Toli, Inc. was not and never was the owner of the properties upon which the hotels were constructed. Teague and obviously Patel both knew this.  The applicable hotel entity was the real party in interest.

**F.     Claims Under the Contracts**

37.     The contracts require that any claim "be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later."  *See, e.g.*, Exhibit P-1 § 4.3.2.  Claims must be initiated by written notice to the architect and the other party.  *Id*.  The contracts require that the parties first send claims to the architect for decision.  *Id*. § 4.4.1.  Further,

> [a]n initial decision by the Architect shall be required as a condition precedent to mediation, arbitration, or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect.

*Id*.  However, "[i]f a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect . . . ."  *Id*. § 4.4.8.

38.     The contracts also require that any claim arising out of the contract "shall, after initial decision by the Architect or 30 days after submission to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party."  *Id*. § 4.5.1.  If not resolved by mediation, the contract requires that

claims be subject to arbitration unless they relate to aesthetic effect. *Id*. §§ 4.6.1, 4.6.2. The arbitration award is a final judgment. *Id*. § 4.6.6.

39.     The parties never sought to bring their claims before the architect. They also never sought to resolve their claims by mediation or arbitration before pursuing legal actions as the contracts require. Waiver of arbitration occurs when the party seeking arbitration invokes the judicial process to the detriment or prejudice of the other party. *Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986). Here, no party ever sought to invoke arbitration, and both sides submitted to formal litigation. Further, the "[d]uties, and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." *See, e.g.*, Exhibit P-1 § 13.4.1. This action as based on the contracts is valid.     40.     At trial, Auer asserted it was no longer the contractor under the contracts for any of the Hotel Entities. After a seven day notice, the contracts allow for termination of the contracts by the contractor when work is stopped for 30 days because the owner has not made payment. *See, e.g.*, Exhibit P-1 §§ 14.1.1, 14.1.3. There is no evidence of a seven day notice to *terminate* any of the contracts after 30 days non-payment. Auer's only evidence relates to notice of stopping work because of non-payment after 7 days. *See* Defendants' Exhibit 10. In addition, the Hotel Entities have not suggested that their relationships with Auer should not be governed by the contracts.

### *Wheeler Hospitality, Inc. – The Wheeler Hotel*

41.     Auer breached the Wheeler Contract in the following ways:

a.   Auer did not build the Wheeler Hotel in accordance with the Wheeler Hotel plans, drawings, and specifications, as required by § 3.1.2 of the General Conditions of the Wheeler Contract.

b.   Auer did not build the Wheeler Hotel in a good and workmanlike manner.

c.   The work performed or supervised by Auer on the Wheeler Hotel failed the Texas Accessibility Standards inspection performed on March 31, 2009.

d.   Auer failed to construct the Wheeler Hotel "free from defects" as required by § 3.5 of the General Conditions of the Wheeler Contract.

e.   Auer failed to properly supervise the subcontractors on the Wheeler Hotel project, as required by § 3.3 of the General Conditions of the Wheeler Contract.

f.   Auer failed to employ a competent superintendent to be at the Wheeler Hotel during performance of the work, as required by § 3.9 of the General Conditions of the Wheeler Contract.

g.   Auer failed to pay the subcontractors and suppliers, causing numerous mechanics liens to be filed on the Wheeler Hotel.

h.   Auer did not complete the Wheeler Hotel in the amount of time required for performance of the Wheeler Contract.

42.   Auer's breaches individually, and collectively, constitute a material breach of the Wheeler Contract.

43.   Wheeler Hospitality, Inc. performed the Wheeler Contract by paying Auer all amounts owed, less the $72,880 properly withheld as retainage to satisfy outstanding claims of unpaid subcontractors and suppliers.

44.   Auer's breach of the Wheeler Contract caused Wheeler Hospitality, Inc. actual damages in the total amount of $329,740.37.

45.   Auer's lien is invalid because all amounts owed for work performed or materials supplied, less properly withheld retainage, were paid to Auer.

46.    Because Auer did not pay the subcontractors and suppliers, pursuant to Texas Property Code Section 53.153, Auer must indemnify Wheeler Hospitality, Inc. against such claims.

47.    The amount required to indemnify Wheeler Hospitality, Inc. from subcontractor and supplier lien claims is $92,216.19.

48.    Because of Auer's breach of the Wheeler Contract, Wheeler Hospitality, Inc. is entitled to recover reasonable attorney's fees, along with all costs of Court.

49.    Auer did not plead affirmative defenses in this Adversary Proceeding; its claims in this Adversary Proceeding against Wheeler Hospitality, Inc. are limited to those that can be ascertained by its amended proof of claim [Claim No. 11-2, Case No. 10-20166].

50.    Based on the above findings and conclusions, the claims asserted by Auer in its amended proof of claim are disallowed in their entirety.

51.    Because Teague failed to plead any claims for affirmative relief in this Adversary Proceeding, his claims in this Adversary Proceeding against Wheeler Hospitality, Inc. are limited to those that can be ascertained by his proof of claim [Claim No. 12-1, Case No. 10-20166] .

52.    Based on the above findings and conclusions, the claims asserted by Teague in his proof of claim are disallowed in their entirety.

_Perryton Hospitality, Inc. – The Perryton Hotel_

53.    Auer breached the Perryton Contract in the following ways:

    a.    Auer did not build the Perryton Hotel in accordance with the Perryton Hotel plans, drawings, and specifications, as required by § 3.1.2 of the General Conditions of the Perryton Contract.

    b.    Auer did not build the Perryton Hotel in a good and workmanlike manner.

c.     The work performed or supervised by Auer on the Perryton Hotel failed the Texas Accessibility Standards inspection performed on April 13, 2009.

d.     Auer failed to construct the Perryton Hotel "free from defects" as required by § 3.5 of the General Conditions of the Perryton Contract.

e.     Auer failed to properly supervise the subcontractors on the Perryton Hotel project, as required by § 3.3 of the General Conditions of the Perryton Contract.

f.     Auer failed to employ a competent superintendent to be at the Perryton Hotel during performance of the work, as required by § 3.9 of the General Conditions of the Perryton Contract.

g.     Auer failed to pay the subcontractors and suppliers, causing numerous mechanics liens to be filed on the Perryton Hotel.

h.     Auer did not complete the Perryton Hotel in the amount of time required for performance of the Perryton Contract.

54.     Auer's breaches individually, and collectively, constitute a material breach of the Perryton Contract.

55.     Perryton Hospitality, Inc. performed the Perryton Contract by paying Auer all amounts owed, less the $139,737.75 properly withheld as retainage to satisfy outstanding claims of unpaid subcontractors and suppliers.

56.     Auer's lien is invalid because all amounts owed for work performed or materials supplied, less properly withheld retainage, were paid to Auer.

57.     Auer's breach of the Perryton Contract caused Perryton Hospitality, Inc. to incur actual damages in the total amount of $616,112.75.

58.     Because Auer did not pay the subcontractors and suppliers, pursuant to Texas Property Code Section 53.153, Auer must indemnify Perryton Hospitality, Inc. against such claims.

- 46 -

59.    The amount required to indemnify Perryton Hospitality, Inc. from subcontractor and supplier lien claims is $289,718.83.

60.    Because of Auer's breach of the Perryton Contract, Perryton Hospitality, Inc. is entitled to recover reasonable attorney's fees, along with all costs of Court.

61.    Because Auer failed to plead any claims for affirmative relief in this Adversary Proceeding and its proof of claim [Claim No. 29-1, Case No. 10-20167] was not timely filed, Auer has no other claims against Perryton Hospitality, Inc. other than the lien claim, which has already been invalidated.

62.    Based on the above findings and conclusions, the claims asserted by Auer in its untimely proof of claim are disallowed in their entirety.

63.    Because Teague failed to plead any claims for affirmative relief in this Adversary Proceeding and did not file a proof of claim, he has no claims against Perryton Hospitality, Inc.

*Decatur Hospitality, Inc. – The Decatur Hotel*

64.    Auer breached the Decatur Contract in the following ways:

    a.    The work performed by Auer on the Decatur Hotel was not in accordance with the Decatur Hotel plans, drawings, and specifications, as required by § 3.1.2 of the General Conditions of the Decatur Contract.

    b.    The work performed by Auer on the Decatur Hotel was not performed in a good and workmanlike manner.

    c.    The work performed by Auer on the Decatur Hotel was not "free from defects" as required by § 3.5 of the General Conditions of the Decatur Contract.

    d.    Auer failed to properly supervise the subcontractors on the Decatur Hotel project, as required by § 3.3 of the General Conditions of the Decatur Contract.

      e.      Auer failed to pay the subcontractors and suppliers, causing numerous mechanics liens to be filed on the Decatur Hotel.

      f.      Auer did not complete the Decatur Hotel in the amount of time required for performance of the Decatur Contract.

65.     Auer's breaches, individually and collectively, constitute a material breach of the Decatur Contract.

66.     Decatur Hospitality, Inc. performed the Decatur Contract by paying Auer for all amounts approved by Brewer, the project architect, less properly withheld retainage.

67.     Auer's breach of the Decatur Contract caused Decatur Hospitality, Inc. actual damages in the total amount of $708,023.02.

68.     Auer's lien is invalid because all amounts approved by Brewer for work performed or materials supplied, less properly withheld retainage, were paid to Auer.

69.     Because Auer did not pay the subcontractors and suppliers, pursuant to Texas Property Code Section 53.153, Auer must indemnify Decatur Hospitality, Inc. against such claims.

70.     The amount required to indemnify Decatur Hospitality, Inc. from subcontractor and supplier lien claims is $410,523.02.

71.     Because of Auer's breach of the Decatur Contract, Decatur Hospitality, Inc. is entitled to recover reasonable attorney's fees, along with all costs of Court.

72.     Because Auer failed to plead any claims for affirmative relief in this Adversary Proceeding and its proof of claim [Claim No. 13-1, Case No. 10-20171] is based on the Default Judgment that has been set aside, Auer has no other claims against Decatur Hospitality, Inc. other than the lien claim, which has already been invalidated.

73.     Based on the above findings and conclusions, the claims asserted by Auer

in its proof of claim are disallowed in their entirety.

74.     Because Teague failed to plead any claims for affirmative relief in this Adversary

Proceeding, he has no other claims against Decatur Hospitality, Inc.

75.     Based on the above findings and conclusions, the claims asserted by Teague in his

proof of claim [Claim No. 14-1, Case No. 10-20171] are disallowed in their entirety.

### *Borger Properties, Inc. – The Borger Hotel*

76.     Borger Properties, Inc. entered into a valid, enforceable construction contract with

Auer for the construction of the Borger Hotel.

77.     Auer breached the Borger Contract in the following ways:

     a.     The work performed by Auer on the Borger Hotel was not in accordance with the Borger Hotel plans, drawings, and specifications, as required by § 3.1.2 of the General Conditions of the Borger Contract.

     b.     The work performed by Auer on the Borger Hotel was not performed in a good and workmanlike manner.

     c.     The work performed by Auer on the Borger Hotel was not "free from defects" as required by § 3.5 of the General Conditions of the Borger Contract.

     d.     Auer failed to properly supervise the subcontractors on the Borger Hotel project, as required by § 3.3 of the General Conditions of the Borger Contract.

     e.     Auer failed to pay the subcontractors and suppliers, causing numerous mechanics liens to be filed on the Borger Hotel.

     f.     Auer did not complete the Borger Hotel in the amount of time required for performance of the Borger Contract.

78.     Auer's breaches, individually and collectively, constitute a material breach of the

- 49 -

Borger Contract.

79.    Borger Properties, Inc. performed the Borger Contract by paying Auer for all amounts due for work performed by Auer, less properly withheld retainage.

80.    Any lack of performance by Borger Properties, Inc. was excused because such occurred after Auer had already materially breached the Borger Contract.

81.    Auer's breach of the Borger Contract caused Borger Properties, Inc. actual damages in the total amount of $3,664,948.22.

82.    Auer's lien is invalid because all amounts owed for work performed or materials supplied, less properly withheld retainage, were paid to Auer.

83.    Because Auer did not pay the subcontractors and suppliers, pursuant to Texas Property Code Section 53.153, Auer must indemnify Borger Properties, Inc. against such claims.

84.    The amount required to indemnify Borger Properties, Inc. from subcontractor and supplier lien claims is $324,249.68.

85.    Because of Auer's breach of the Borger Contract, Borger Properties, Inc. is entitled to recover reasonable attorney's fees, along with all costs of Court.

86.    Auer failed to plead any claims for affirmative relief in this Adversary Proceeding; Auer's proof of claim [Claim No. 15-1, Case No. 10-20168] is based on the Default Judgment that has been set aside.  Auer has no other claims against Borger Properties, Inc. other than the lien claim, which is invalidated.

87.    Based on the above findings and conclusions, the claims asserted by Auer in its proof of claim are disallowed in their entirety.

88.    Because Teague failed to plead any claims for affirmative relief in this Adversary

Proceeding and his proofs of claim [Claim Nos. 13-1 and 14-1, Case No. 10-20168] are based on the Default Judgment that has been set aside, Teague has no other claims against Borger Properties, Inc.

89.    Based on the above findings and conclusions, the claims asserted by Teague in his proofs of claim are disallowed in their entirety.

### *Borger Hospitality, Inc. – The Snyder Hotel and The Stanton Hotel*

#### *The Snyder Hotel*

90.    Auer failed to pay the subcontractors and suppliers, causing numerous mechanics liens to be filed on the Snyder Hotel.

91.    Auer did not complete the Snyder Hotel in the amount of time required for performance of the Snyder Contract.

92.    Borger Hospitality, Inc. performed the Snyder Contract by paying Auer all amounts owed, less amounts properly withheld as retainage to satisfy outstanding claims of unpaid subcontractors and suppliers.

93.    Auer's breach of the Snyder Contract caused Borger Hospitality, Inc. actual damages in the total amount of $824,415.46.

94.    Auer's lien is invalid because all amounts owed for work performed or materials supplied, less properly withheld retainage, were paid to Auer.

95.    Because Auer did not pay the subcontractors and suppliers, pursuant to Texas Property Code Section 53.153, Auer must indemnify Borger Hospitality, Inc. against such claims.

96.    The amount required to indemnify Borger Hospitality, Inc. from subcontractor and supplier lien claims is $270,628.31.

97.     Because of Auer's breach of the Snyder Contract, Borger Hospitality, Inc. is entitled to recover reasonable attorney's fees, along with all costs of Court.

98.     Because Auer failed to plead any claims for affirmative relief in this Adversary Proceeding and its proof of claim [Claim No. 16-1, Case No. 10-20170] is based on the Default Judgment that has been set aside, Auer has no other claims against Borger Hospitality, Inc. other than the lien claim, which is invalidated.

99.     Based on the above findings and conclusions, the claims asserted by Auer in its proof of claim are disallowed in their entirety.

100.    Because Teague failed to plead any claims for affirmative relief in this Adversary Proceeding, his claims in this Adversary Proceeding against Borger Hospitality, Inc. are limited to those that can be ascertained by his proof of claim [Claim No. 15-1, Case No. 10-20170].

101.    Based on the above findings and conclusions, the claims asserted by Teague in his proof of claim are disallowed in their entirety.

### *The Stanton Hotel*

102.    Auer, through Teague, and Borger Hospitality, Inc., through Patel, conspired to divert funds from the Stanton Hotel project to other projects with which Patel was involved.  All evidence concerning the cause of the various problems with the construction of the hotel and the claims made by the parties as set forth is inherently unreliable.  All claims by Borger Hospitality, Inc. concerning the Stanton Hotel are denied, and all claims by Auer and Teague concerning the Stanton Hotel are disallowed.

### G.     Other Matters

103.    As stated, the Pretrial Order does not raise any claim of plaintiff Childress

Hospitality, L.P. In addition, the Childress Hospitality, L.P. bankruptcy case was dismissed.

Auer, however, does assert a claim against Childress Hospitality, L.P. and requests that the Court

determine its claim. The Court declines. Such claim is not related to a pending bankruptcy case.

*See* 28 U.S.C. § 1334(b).

104. Auer breached the Wheeler Contract, the Perryton Contract, the Snyder Contract,

the Borger Contract, and the Decatur Contract by stopping work and leaving the jobs in late

December 2009, early January 2009.

105. All other claims are denied.

106. Findings of fact may, where appropriate, be considered conclusions of law.

107. Conclusions of law may, where appropriate, be considered findings of fact.

### End of Memorandum Opinion ###